UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WALTER MOORE,

    Plaintiff,                                            Case Number 10-12801

v.                                                       Honorable Thomas L. Ludington

MARY BANNON, and WILLIAM PRIEST,
In their individual capacities, jointly and severally,

    Defendants.
_____/

**<u>OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'S MOTION FOR SUMMARY JUDGMENT, DISMISSING PLAINTIFF'S §1983 CLAIMS FOR EXCESSIVE FORCE AND FABRICATION OF EVIDENCE WITH PREJUDICE, DISMISSING PLAINTIFF'S §1983 CLAIM FOR WARRANTLESS ENTRY AGAINST WILLIAM PRIEST WITH PREJUDICE, DISMISSING DEFENDANT WILLIAM PRIEST WITH PREJUDICE,  AND AMENDING THE SCHEDULING ORDER</u>**

On July 15, 2010, Plaintiff Walter Moore filed a complaint against Defendants Mary Bannon and John Doe, both Michigan State Police officers, alleging three claims under a single cause of action pursuant to 42 U.S.C. § 1983.  ECF No. 1. Plaintiff's complaint alleges that Defendants violated his clearly established right not to be subjected to excessive force in the course of an arrest, violated his right to not have false and fabricated evidence used against him or used as a basis to justify an otherwise unconstitutional police search, and violated his right to be free from a warrantless entry of his home. Plaintiff's claims arise from a series of events that led to his arrest for assault and the unlawful driving away of an automobile. Plaintiff filed an amended complaint on November 5, 2010, substituting William Priest as a defendant in John Doe's stead.  ECF No. 14. The amended complaint contained the same single cause of action as the original complaint.

Now before the Court is Defendants' motion for summary judgment. ECF No. 23. Defendants generally allege that they are entitled to qualified immunity on Plaintiff's excessive force

claim because, even if the force used was excessive, they could have reasonably concluded that the level of force was justified when Plaintiff actively resisted the arrest. Defendants also contend that they are entitled to qualified immunity for the warrantless entry into Plaintiff's home because Plaintiff assaulted Trooper Bannon prior to the entry, which constituted a felony assault in the trooper's presence and justified a warrantless entry. Finally, Defendants contend that there is no evidence to support Plaintiff's claim that Defendants fabricated or falsified any evidence that was used against Plaintiff, and Defendants are thus entitled to summary judgment on this claim. Plaintiff filed a response on June 7, 2011, contending that his clearly established rights were violated and Defendants's warrantless entry does not come within any exception to the warrant requirement. ECF No. 28. Plaintiff does not address Defendants's argument that there is no evidence to support his claim that Defendants fabricated or falsified any evidence that was used against Plaintiff. Defendants filed a reply on June 21, 2011. ECF No. 29.

The Court held a hearing on Friday, August 5, 2011. For the reasons explained hereafter, the Court will grant in part and deny in part Defendants' motion for summary judgment.

**I.  Facts**

On May 20, 2008, Plaintiff was returning home from a job in Michaywe area near Gaylord, Michigan, along with an employee, Larry Roux. As they passed Ronald John ("R.J.") Peters's home, Plaintiff saw R.J. in the yard. Plaintiff stopped to discuss the return of a 1997 Geo Metro which R.J. had purchased from Plaintiff but had failed to make full payment. Plaintiff approached R.J. and the two had a conversation, which was heated at times. Plaintiff demanded the title and car key. R.J. removed the license plate and some other personal items from the car and gave Plaintiff the key. Roux, who was seated in the Plaintiff's truck 20 or 30 feet away, witnessed the events.

Plaintiff drove the car away while Roux drove Plaintiff's truck. Roux later testified at deposition that R.J. gave the car key to the Plaintiff and both Plaintiff and Roux testified there was no physical altercation between Plaintiff and R.J. Pl.'s Resp. to Def.s' Mot. for Summ. J. Ex. 2 at 9.

The following evening, R.J. went to the Michigan State Police post bearing several bruises. RJ reported that Plaintiff had assaulted him by striking him in the face, shoulder and stomach with a closed fist and then drove away with R.J.'s car. Michigan State Police Trooper Mary Bannon ("Trooper Bannon") was assigned to investigate the reported assault and stolen vehicle. Trooper Bannon interviewed R.J. and took photographs of his injuries. Trooper Bannon was unable to locate R.J.'s car. She then ran the vehicle identification number for the missing vehicle through LEIN and confirmed that the car was registered to R.J.

Trooper Bannon telephoned Otsego County Assistant Prosecuting Attorney Brendan Curren ("APA Curren") and solicited his opinion as to whether she had probable cause to arrest Plaintiff. APA Curren provided verbal authorization to arrest Plaintiff for assault and that if Plaintiff was in possession of the car, there would be probable cause to arrest Plaintiff for the unlawful driving away of an automobile ("UDAA").

Trooper Bannon went to Plaintiff's house to interview him but he was not home at the time. Trooper Bannon left her business card with Plaintiff's mother and requested that Plaintiff call Trooper Bannon. The next day, Plaintiff telephoned the state police post but Trooper Bannon did not speak with him. Upon learning that Plaintiff was home, Trooper Bannon called Michigan State Police Trooper William Priest ("Trooper Priest") for backup and then went to Plaintiff's home to effectuate an arrest for the reported assault and UDAA. The troopers approached Plaintiff's home and Trooper Bannon knocked on the front storm door. The main door to the house was closed.

Plaintiff answered and opened the main, inside door but he did not open the outer storm door. Trooper Bannon asked Plaintiff to come outside, but Plaintiff declined. Trooper Bannon informed Plaintiff that he was under arrest and then opened the storm door. Trooper Bannon stepped forward and placed her foot inside the door frame. Plaintiff then pushed the main door closed onto her foot. The troopers concluded that Plaintiff had committed an assault on Trooper Bannon and resisted arrest by attempting to close the door on Trooper Bannon's foot. The troopers forced open the main door and entered Plaintiff's home.

Plaintiff resisted Trooper Bannon's attempts to place his hand behind his back so she could apply handcuffs despite her continued instruction that he was under arrest. Trooper Priest then advised Plaintiff that if he did not submit to the arrest, Trooper Priest would need to use his taser. Plaintiff relented. Trooper Priest placed Plaintiff into handcuffs, but once he was in handcuffs Plaintiff began to resist Trooper Bannon's attempts to search him. Defendants contend that during the course of the troopers' attempt to arrest Plaintiff, he fell, striking his head and left shoulder on the floor. Plaintiff contends that Trooper Priest lifted Plaintiff's arms and then purposely tripped Plaintiff. Plaintiff states that he hit his face on the floor, and that his shoulder and head broke his fall before he was dragged towards the door by the handcuffs.

Plaintiff testified at his deposition that he injured his shoulder and had a "strawberry" on his forehead but that he was not bleeding. Pl.'s Resp. to Def.s' Mot. for Summ. J. Ex. 1 at 64-65. Plaintiff was then taken to the Otsego County Jail where he was booked and lodged. Plaintiff did not request medical attention at any time. Plaintiff's mother and girlfriend both testified at their depositions that they observed the troopers push Plaintiff and that Plaintiff then landed face first on the floor before being drug out of the house. Pl.'s Resp. to Def.s' Mot. for Summ. J. Ex. 7 at 9-10;

Ex. 8 at 11-14. Plaintiff's girlfriend stated that Plaintiff has complained of shoulder pain since the arrest, but had not complained of a similar pain prior to that time. Pl.'s Resp. to Def.s' Mot. for Summ. J. Ex. 8 at 17-18.

Trooper Bannon subsequently requested warrants for the underlying assault and battery on R.J. and Resisting and Obstructing. A warrant was also sought for the alleged UDAA. Trooper Bannon later obtained a search warrant for Plaintiff's residence to look for the car, but she could not locate it. Plaintiff was released from jail the next day and he telephoned Trooper Bannon. During the call, Plaintiff denied assaulting R.J. and explained that because R.J. owed Plaintiff money, R.J. had voluntarily given him the keys. Plaintiff recalled that R.J. mentioned he would give Plaintiff the title to the car later. Plaintiff also claimed to have a witness, Roux, who was with him at the time he visited R.J.'s house. Trooper Bannon interviewed Roux, who denied that Plaintiff assaulted R.J..

The Otsego County Prosecutor initially issued a warrant for the assault charge, but then later dismissed the charge. In exchange for Plaintiff's return of the vehicle to R.J., the prosecuting attorney agreed to dismiss the charge because a conviction was questionable under the "beyond a reasonable doubt" standard. Plaintiff then filed the instant complaint seeking monetary damages against Troopers Bannon and Priest. Plaintiff's single § 1983 count in his complaint seeks damages for the troopers entering his home without a warrant, for fabricating evidence against him, and for using excessive force in the course of Plaintiff's arrest. Following the close of discovery, both troopers moved for summary judgment based on qualified immunity.

## II.   Standard of Review

A motion for summary judgment should be granted if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be proven or is genuinely disputed must support the assertion by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). The party seeking summary judgment has the initial burden of informing the Court of the basis for its motion, and identifying where to look in the record for relevant facts "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. Pro. 56(e)(2); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If the opposing party fails to raise genuine issues of fact and the record indicates the moving party is entitled to judgment as a matter of law, the court shall grant summary judgment. *Anderson*, 477 U.S. at 250.

The court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### III. Discussion

#### A. Qualified Immunity

##### 1. Legal Standard

Qualified immunity is an affirmative defense against a Section 1983 claim. *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996). The doctrine of qualified immunity, "shields 'governmental officials performing discretionary functions . . . from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.' " *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 172 (6th Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). Government officials are immune from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The Supreme Court instructs lower courts to perform a two-tiered inquiry to determine whether a defendant is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts should first determine whether "the facts alleged show the officer's conduct violated a constitutional right[.]" *Id.* at 201. If the plaintiff establishes that a constitutional violation occurred, a court must next consider "whether the right was clearly established." *Id.* In order for a right allegedly violated to be considered clearly defined, "the contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Id.* Defendants are therefore entitled to qualified immunity if a reasonable officer would have believed that the use of force was lawful "in light of clearly established law and the information [the troopers] possessed." *Anderson*, 483 U.S. at 641.

In inquiring whether a constitutional right is clearly established, a court " 'must look first

to decisions of the Supreme Court, then to decisions of [the Sixth Circuit] and other courts within [the Sixth Circuit], and finally to decisions of other circuits.' " *Baker v. City of Hamilton*, 471 F.3d 601, 606 (6th Cir. 2006) (citing *Champion v. Outlook Nashville, Inc*, 380 F.3d 893, 902 (6th Cir. 2004) (quoting *Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002)), *cert denied sub nom*, *Dickhaus v. Champion*, 544 U.S. 975 (2005)). Those decisions must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting. *Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996) (citation and quotation omitted).

When a defendant raises a defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity. *Saucier*, 533 U.S. at 201. The Sixth Circuit has occasionally added a third inquiry: "whether the plaintiff has offered sufficient evidence 'to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.' " *Armstrong v. City of Melvindale*, 432 F.3d 695, 699 (6th Cir. 2006) (quoting *Feathers v. Aey*, 310 F.3d 843, 848 (6th Cir. 2003) (internal citation omitted)); *see also Dickerson v. McClellan*, 101 F.3d 1151, 1157-58 (6th Cir. 1996) (applying qualified immunity analysis to the question of whether doctors' actions violated the Eighth Amendment). The Sixth Circuit has noted that this third inquiry may, in some cases, increase the clarity of the court's analysis. *Armstrong*, 432 F.3d at 699. Qualified immunity analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition [.]" *Saucier*, 533 U.S. at 201. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

*Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004) (quoting *Saucier*, 533 U.S. at 201-02).

The first step in addressing an excessive force claim under § 1983 is to identify the precise contours of the constitutional right alleged to have been violated. *Graham v. Connor*, 490 U.S. 386, 394 (1989). Because the troopers were advised that probable cause existed for an arrest, the troopers believe they had the right to use force to effectuate the arrest. *Id.* at 396 (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). The exact amount of force allowed is not precisely defined nor capable of precise definition, but instead requires an analysis of the facts and circumstances of each particular case. *Id.* Factors that may be considered in evaluating the level of force include whether the suspect is posing a threat to the safety of the officers and whether he is actively resisting arrest or attempting to evade arrest. *Id.* Reasonableness of force must be judged from the perspective of a reasonable officer on the scene, not with the benefit of hindsight. *Id.* "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97. Even if the precise level of force were now found to be excessive in the circumstances, the troopers contend that they are nonetheless entitled to qualified immunity because they could have concluded that they had a legitimate justification for using that level of force. *Saucier*, 533 U.S. at 201-02.

### 2.    Reasonableness of the Force Used During Plaintiff's Arrest

Defendants argue that neither used excessive nor unreasonable force. Plaintiff physically resisted Trooper Bannon's initial attempts to arrest him and then assaulted Trooper Bannon when he attempted to close the door on her foot. At that point, Trooper Bannon contends that she was permitted to use reasonable force to push Plaintiff's door open and effectuate Plaintiff's arrest.

Plaintiff thereafter continued to resist arrest.

Defendants also assert that Trooper Priest, who was not part of the initial investigation and was at the scene to assist Trooper Bannon as her back-up, did not violate Plaintiff's constitutional rights when he used force to arrest Plaintiff. Even if Plaintiff believes that the troopers' presence in his house was not lawful or even if he believes his arrest is not lawful, he is not permitted to assault officers or otherwise physically resist arrest. Mich. Comp. Laws § 750.81d(1); *People v. Ventura*, 262 Mich. App. 370, 373 (2004) (holding that minor defendant could be prosecuted for resisting and obstructing under Mich. Comp. Laws § 750.81d although the arrest he resisted was unlawful).[1] Plaintiff acknowledges that he refused to comply with the troopers' commands. Defendants contend that accordingly, the level of force used in effectuating Plaintiff's arrest was reasonable and that, as a result, Plaintiff's § 1983 claims against the troopers premised on excessive force must be dismissed on the basis of qualified immunity.

Plaintiff responds that his excessive force claim is based upon his treatment by Trooper Priest after he was handcuffed. Plaintiff thus concedes that he is not making a claim for excessive force concerning the manner of handcuffing or Trooper Priest's threat to use the taser. More specifically, Plaintiff states that his excessive force claim is based on his being deliberately tripped, pushed to the floor face first, and then dragged across the floor by the handcuffs. There is a "clearly established legal norm precluding the use of violent physical force against a criminal suspect who already has been subdued and does not present a danger to himself or others." *See Grawey v. Drury*,

---

[1]Under prior Michigan law, an individual could use reasonable force to resist an illegal arrest. *People v. Reed*, 43 Mich. App. 51 (1972). Under current Michigan law, an individual who resists an arrest, whether lawful or unlawful, is committing a felony of resisting and obstructing. Mich. Comp. Laws § 750.81d. Indeed, the availability of a § 1983 cause of action is important as it now presents the only limitation on an unlawful arrest in Michigan.

-10-

567 F.3d 302 (6th Cir. 2009) ("The general consensus among our cases is that officers cannot use force . . . on a detainee who has been subdued" and "is not resisting arrest.").

Plaintiff, however, is unable to satisfy the second prong of the qualified immunity inquiry with respect to Trooper Priest's actions. The second prong of qualified immunity focuses on "whether the officer had fair notice that [his] conduct was unlawful." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). *Brosseau* identifies two possible approaches to this question: First, "in an obvious case, [generalized] standards can 'clearly establish' the answer, even without a body of relevant case law." *Id.* at 199 (citing *Hope v. Pelzer*, 536 U.S. 730, 738 (2002)). Otherwise, the violation must be apparent based on the officer's failure to adhere to a "particularized" body of precedent that "squarely governs" the case. *Id.* at 199-201. Stated differently, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. To determine whether a constitutional right is clearly established, the Court must look to binding precedent of (1) the Supreme Court, (2) the Sixth Circuit Court of Appeals, or (3) itself. *Barret v. Stubenville City*, 388 F.3d 967, 972 (6th Cir. 2004) (citation omitted).

In the present case, even assuming that Plaintiff's factual allegations establish a violation of the Fourth Amendment by Priest, it is not an "obvious" case that would provide notice to an officer that his conduct was unconstitutional. Plaintiff initially resisted arrest but after submitting to the arrest, he resisted Trooper Bannon's attempt to perform a search of Plaintiff's person incident to arrest. During the course of the search, Plaintiff's pants, which were loose, began to fall and he adjusted his legs to avoid the pants falling completely. In concurrence with this, Trooper Priest perceived that Plaintiff was "flailing," and pushed Plaintiff to the ground in order for Trooper Bannon to complete the search. ECF No. 28 Ex. 6 at 10-11.

"The Fourth Amendment addresses 'misuse of power,' not the accidental effects of otherwise lawful government conduct." *Brower v. Inyo County*, 489 U.S. 593, 596 (1989) (internal citations omitted). Moreover, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a [suspect's] constitutional rights." *Oklahoma City v. Tuttle*, 471 U.S. 808, 817 n.4 (1985). Similarly, when Trooper Priest pulled Plaintiff's arms up and then pushed him to the floor, this action was not obviously unlawful in light of Trooper Priest's assisting Trooper Bannon's search incident to arrest that Plaintiff appeared to be resisting. Even if Trooper Priest could have been gentler, "the reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means." *Illinois v. Lafayette*, 462 U.S. 640, 647 (1983). Therefore, Plaintiff must identify Trooper Priest's failure to adhere to a more "particularized" body of precedent that "squarely governs" the present case. *See Brosseau*, 543 U.S. at 199-201. Plaintiff—who bears the burden of refuting Trooper Priest's claim of immunity—has not offered any authority which clearly establishes that an officer violates the Fourth Amendment when he forces a handcuffed suspect in order to facilitate a resisted search. Accordingly, Defendants's motion to for summary judgment as to Plaintiff's excessive force claim against Trooper Priest will be granted on the basis of qualified immunity.

### B.  Plaintiff's False or Fabricated Evidence Claim

Plaintiff also alleges that Defendants fabricated evidence, subsequent to arrest, to conceal their unlawful and unconstitutional conduct and to support bogus UDAA charges against Plaintiff. In his deposition, Plaintiff testified that he did not know whether the troopers falsified or fabricated any evidence. Def.s' Mot. for Summ. J. Ex. 3 at 92-93. The party who bears the burden of proof must present a jury question as to each element of the claim. *Davis v. McCourt*, 226 F.3d 506, 511

(6th Cir. 2000).

Although Plaintiff took R.J.'s keys and then drove off with R.J.'s car, he did not hold title to the vehicle. Plaintiff then concealed the location of the vehicle when he spoke with Trooper Bannon. Def.s' Mot. for Summ. J. Ex. 3 at 72-73. The title owner of the vehicle reported that Plaintiff had taken the vehicle. In the absence of any evidence that the troopers fabricated or falsified any evidence used against Plaintiff, Defendants contend that their motion for summary judgment should be granted and Plaintiff did not respond to Defendants' motion on this claim. Because Plaintiff has not offered any evidence to support his contention that Defendants falsified or fabricated evidence subsequent to his arrest, and the facts regarding Plaintiff's arrest for the UDAA charge are undisputed, Defendants's motion for summary judgment on this claim will be granted.

### C. Plaintiff's Claim for Warrantless Entry to his Home

The Fourth Amendment to the United States Constitution provides that:

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. A police officer's entry into a home without a warrant is presumptively unconstitutional under the Fourth Amendment. *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 996 (6th Cir. 1994). As the Supreme Court has observed, the zone of privacy protected by the Fourth Amendment is most clearly defined "when bounded by the unambiguous physical dimensions of an individual's home." *Payton v. New York*, 445 U.S. 573, 589 (1980). Indeed, the Fourth Amendment "has drawn a firm line at the entrance to the house," a threshold which police officers generally may not cross without a warrant. *Id.* at 590.

There are several well-established exceptions to the warrant requirement and it is not possible to create a "succinct yet exhaustive" list of circumstances that will satisfy the exigent circumstances exception to the warrant requirement. *U.S. v. Rohrig*, 98 F.3d 1506, 1515 (6th Cir. 1996). The Sixth Circuit has identified general situations during which a warrant is not needed for entry into a home: 1) during hot pursuit of a fleeing felon; 2) where there is the danger of imminent destruction of evidence; 3) where there is the need to prevent a suspect's escape; 4) where there is a risk of danger to the police or others. *Id.* "[B]ecause the government's interest [in apprehending a suspect] is necessarily less compelling in cases involving minor offenses, the gravity of the underlying offense is 'an important factor to be considered when determining whether any exigency exists.' " *Rohrig*, 98 F.3d at 1517 (quoting *Welsh v. Wisconsin*, 466 U.S. 740, 750-53 (1984)).

Here, Defendants contend that Trooper Bannon is entitled to qualified immunity because a reasonable officer in her position could have concluded that exigent circumstances existed justifying their intrusion into Plaintiff's house. The objective legal reasonableness of an individual decision must be determined on a case-by-case basis. *See O'Brien*, 23 F.3d at 999. The exigent circumstances exception relies on the premise that the existence of an emergency situation, demanding urgent police action, may excuse the failure to procure a warrant. *United States v. Radka*, 904 F.2d 357, 361 (6th Cir.1990). In reviewing whether exigent circumstances were present, we consider the "totality of the circumstances and the inherent necessities of the situation at the time." *Rohrig*, 98 F.3d at 1511 (citation and quotation marks omitted). Trooper Bannon submits that she acted with probable cause to arrest Plaintiff because she believed he had assaulted R.J. Moreover, under the totality of the circumstances, the warrantless arrest of Plaintiff in his home was authorized under the exigent-circumstances exception because Plaintiff assaulted Trooper Bannon when he closed the

door on her after she informed him that he was under arrest. Trooper Bannon had opened the transparent screen door, behind which Plaintiff was within arm's reach, in an attempt to arrest him and contends that swift actions was required in order to prevent a risk of serious injury after Plaintiff closed the door on her foot. Defendants argue that entering Plaintiff's home without a warrant to effectuate the arrest was thus objectively reasonable. Plaintiff submits that no reasonable officer could conclude that it was objectively reasonable to make a warrantless entry by force into a private home to make a misdemeanor arrest of an individual whose identity and address was known and who was not evading police.

Plaintiff has a clearly established right to be free from warrantless entry of his home, thus the issue at hand is whether an exception to the warrant requirement existed. The exigent circumstances exception to the warrant requirement does not apply in this case. Defendants have alleged that Plaintiff was only suspected of committing misdemeanor offenses. He also had demonstrated cooperation by contacting the state police post as Trooper Bannon requested. Defendants had adequate time to obtain a warrant before going to Plaintiff's home to effectuate the arrest yet chose not to do so. Defendants contend that entry was required in order to subdue and arrest Plaintiff after he closed the inside door on Trooper Bannon's foot, and thus there was "a risk of danger to the police or others."

Trooper Bannon was not assaulted, however, until after she had already crossed the threshold of Plaintiff's house without a warrant. The circumstances did not present a rapidly moving course of events; the events occurred over the course of two days. Moreover, Plaintiff's expectations of privacy were not forfeited because he opened the inside, main door and allowed Trooper Bannon to speak to him through the closed, screen door as Defendants appear to suggest. The Sixth Circuit

requires that exigent circumstances exist before a warrantless arrest can be made of an individual standing in the doorway of a private residence. *Compare United States v. Morgan*, 743 F.2d 1158, 1166 n.2 (6th Cir. 1984), *cert. denied* 471 U.S. 1061 (1985) (concluding that the warrantless arrest of a suspect, as he stood within the door of a private home, after emerging in response to coercive police conduct, violated his Fourth Amendment rights), *with United States v. Vaneaton*, 49 F.3d 1423 (9th Cir. 1995), *cert. denied* 516 U.S. 1176 (1996) (concluding that exigent circumstances were not required where a suspect who lived out of state was arrested for committing a felony and voluntarily exposed himself to a warrantless arrest by freely opening the door of his motel room to the police). As a result, a Fourth Amendment violation occurred by Trooper Bannon's warrantless entry into Plaintiff's home because no exception to the warrant requirement existed.[2]

The issue that remains is whether Trooper Bannon is entitled to qualified immunity because a reasonable officer in her position would have concluded that exigent circumstances existed. Trooper Bannon contends that she entered the home only after a felony occurred by virtue of Plaintiff closing the door on her foot, and a reasonable officer would conclude that this constituted an exception to the warrant requirement based on exigent circumstances. On June 18, 2002, the Director of the State of Michigan Department of State Police issued a memorandum, which states that "officers must remember that **Michigan case law prohibits an officer from forcibly entering a residence for a warrantless misdemeanor arrest**." ECF No. 28 Ex. 7 at 1 (emphasis in original). Trooper Bannon, however, crossed the threshold of Plaintiff's residence in order to effectuate a

---

[2]To the extent that Trooper Priest's warrantless entry into Plaintiff's home is challenged, a reasonable officer in Trooper Priest's position would have concluded that exigent circumstances existed after witnessing Trooper Bannon being assaulted and he is thus entitled to qualified immunity.

misdemeanor arrest prior to the felony occurring. A reasonable officer in Trooper Bannon's position would have concluded that opening a suspect's door and crossing the threshold of the residence to effectuate a warrantless misdemeanor arrest was unlawful "in light of clearly established law and the information [the trooper] possessed." *Anderson*, 483 U.S. at 641. Summary judgment as to Plaintiff's §1983 claim for warrantless entry in violation of his Fourth Amendment against Trooper Bannon will be denied.

### IV.  Conclusion

Accordingly, Defendants's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that Plaintiff's §1983 claims for excessive force and fabricating evidence are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Plaintiff's §1983 claim for warrantless entry in violation of his Fourth Amendment rights is **DISMISSED WITH PREJUDICE** as to Trooper William Priest.

It is further **ORDERED** that Defendant William Priest is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the Court's scheduling order is **AMENDED** as follows:

| | |
|---|---|
| Motions in limine due: | January 3, 2012 |
| Final Pretrial Order and Jury Instructions Due: | January 17, 2012 |
| Final Pretrial Conference: | January 24, 2012 at 3:00 p.m. |
| Jury Trial: | February 7, 2012 at 8:30 a.m. |

                                            s/Thomas L. Ludington
                                            THOMAS L. LUDINGTON
                                            United States District Judge

Dated: November 1, 2011

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 1, 2011

                                         s/Tracy A. Jacobs
                                         TRACY A. JACOBS