UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WALTER MOORE,

       Plaintiff,                                  Case Number 10-12801

v.                                           Honorable Thomas L. Ludington

MARY BANNON, and WILLIAM PRIEST,
In their individual capacities, jointly and severally,

       Defendants.

_____/

**ORDER GRANTING PLAINTIFF'S MOTIONS IN LIMINE TO EXCLUDE EVIDENCE
OF PRIOR ARRESTS AND CONVICTIONS, UNRELATED LAWSUITS, AND
DISMISSED PARTIES AND DISMISSED CLAIMS, DENYING PLAINTIFF'S MOTION
IN LIMINE TO EXCLUDE POLICE REPORTS, ORDER SUPPLEMENTAL
BRIEFING, RESCHEDULING TRIAL, AND CANCELING HEARING**

On June 15, 2010, Plaintiff William Moore filed a complaint against Defendants Mary

Bannon and John Doe of the Michigan State Police, alleging three claims under a single cause of

action pursuant to 42 U.S.C. § 1983. ECF No. 1. Plaintiff alleged that Defendants (1) violated his

clearly established rights not to be subjected to excessive force in the course of an arrest; (2)

violated his right to not have false and fabricated evidence used against him or used as a basis to

justify an otherwise unconstitutional police search; and (3) violated his right to be free from a

warrantless entry of his home. On November 5, 2010, Plaintiff filed an amended complaint

substituting William Priest as a defendant in the place of John Doe. ECF No. 14.

Pursuant to Defendants' Motion for Summary Judgment, this Court dismissed the

excessive force claim against Trooper Priest based on qualified immunity and granted summary

judgment as to Plaintiff's false and fabricated evidence claim because he had not offered any

evidence demonstrating that Defendants falsified or fabricated evidence. ECF No. 33. Plaintiff's

§ 1983 claim for warrantless entry in violation of his Fourth Amendment rights against Trooper Bannon remains. *See id.*

Plaintiff's four motions in limine are now before the Court. Plaintiff seeks suppression of four pieces of evidence from use during trial including: (1) an arrest, conviction, and subsequent reversal and dismissal of a first degree murder charge in 1988; (2) any unrelated lawsuits involving Plaintiff including the first degree murder charge in 1988, a previously settled lawsuit against law enforcement personnel, and other lawsuits involving Plaintiff's business; (3) the use of dismissed claims (the claim of fabricated evidence and excessive force) and the dismissal of Trooper Priest as defendant pursuant to the Court's November 1, 2011 opinion and order; and (4) to bar the introduction of police reports prepared by Defendant. ECF Nos. 41-44. In the first motion in limine, Plaintiff argues that the conviction on the first degree murder charge in 1988 is not relevant; alternatively, the evidence has no probative value and will only serve to create bias among the jury. *See* ECF No. 41. Similarly, in the second and third motions in limine, Plaintiff argues that the use of any evidence regarding his involvement in any unrelated suits and the use of evidence pertaining to dismissed claims and dismissal of Trooper Priest are not relevant to the case and any involvement in unrelated lawsuits and the dismissal of both charges and a defendant has no probative value to the pending lawsuit. ECF Nos. 42-43. In the fourth motion in limine, Plaintiff argues that police reports prepared by Defendant are untrustworthy and have extensive hearsay statements from third parties, and therefore should not be admitted into evidence. ECF No. 44.

Defendant filed a consolidated response to Plaintiff's four separate motions in limine, generally arguing that (1) Plaintiff's murder conviction is relevant in assessing damages and causation, and probative in establishing Plaintiff's bias against  law enforcement; (2) the

previously settled lawsuit and the dismissal of claims and dismissal of Trooper Priest as a defendant are, in this case, probative in establishing Plaintiff's bias against law enforcement and establishing Plaintiff's lack of credibility; and (3) the police reports should be admitted because of the Federal Rule of Evidence 803(8) hearsay exception. ECF No. 46. Defendant also asks the Court to grant in part Plaintiff's second motion in limine and exclude evidence of lawsuits relating to Plaintiff's business because the lawsuits are not relevant to the instant case. ECF No. 46.

## I.    Facts

On May 20, 2008, the Plaintiff was returning home from a job in Michewa, giving a ride to an employee, Larry Roux. The Plaintiff drove past Ronald John Peters's ("RJ") home. Realizing that RJ was home, the Plaintiff decided to stop and discuss the return of a car, a 1997 Geo Metro, which RJ had purchased from the Plaintiff but failed to pay for. Leaving Roux in the truck parked 20-30 feet away, the Plaintiff approached RJ and engaged in a sometimes-heated discussion, demanding the car's title and keys. Subsequently, RJ removed some personal items and the license plate from the car, giving the keys to the Plaintiff. Roux witnessed the events sitting in the truck.

Before leaving, the Plaintiff had difficulty in starting the car. With Roux's help, the Plaintiff was able to start the Geo by connecting a disconnected battery cable; the Plaintiff drove the car off the lot and Roux drove the Plaintiff's truck. Roux later testified at deposition that RJ gave the car keys to the Plaintiff; both the Plaintiff and Roux testified there was no physical altercation between the Plaintiff and RJ. Pl.'s Resp. to Def.s' Mot. for Summ. J. Ex. 2 at 9.

The following evening, RJ went to the Michigan State Police Post bearing several bruises and reported that the Plaintiff assaulted him by striking him in the face, shoulder, and stomach

-3-

with a closed fist and then drove away with RJ's car. Michigan State Police Trooper Mary Bannon ("Trooper Bannon") was assigned to investigate the reported assault and stolen vehicle. Trooper Bannon interviewed and took pictures of RJ's injuries, but was unable to locate RJ's car. During the course of her investigation, Trooper Bannon ran the vehicle identification number for the Geo Metro through LEIN and discovered that the car was registered to RJ.

After running the vehicle identification number, Trooper Bannon telephoned Otsego County Assistant Prosecuting Attorney Brendan Curren ("APA Curren") and solicited his opinion as to whether she had probable cause to arrest Plaintiff. APA Curren provided verbal authorization to arrest Plaintiff for assault and that if Plaintiff was in possession of the Geo, there would be probable cause to arrest Plaintiff for the unlawful driving away of an automobile ("UDAA").

After soliciting APA Curren's opinion, Trooper Bannon went to the Plaintiff's home to interview him about the RJ incident; however, the Plaintiff was not home. Trooper Bannon left her business card with the Plaintiff's mother, leaving instructions that the mother give Trooper Bannon a call when Plaintiff arrived. The next day, the Plaintiff called the State Police Post, but failed in reaching Trooper Bannon. Upon learning that the Plaintiff was home, Trooper Bannon called Michigan State Police Trooper William Priest ("Trooper Priest") for back up and went to the Plaintiff's home to effectuate an arrest for the reported assault and UDAA. Upon arrival at the Plaintiff's residence, the Troopers approached the house and Trooper Bannon knocked on the front storm door; the Plaintiff answered by opening the main door but kept the outside storm door closed. Subsequently, Trooper Bannon asked the Plaintiff to come outside, a request the Plaintiff refused. Bannon then informed the Plaintiff that he was under arrest, and opened the storm door. As Trooper Bannon attempted to step forward, she placed her foot inside the

-4-

doorframe, and the Plaintiff pushed the main door closed onto her foot. At that point, the Troopers concluded that the Plaintiff assaulted Trooper Bannon and resisted arrest by closing the main door on her foot; the Troopers forced the door open and entered the Plaintiff's home.

As Trooper Bannon attempted to place Plaintiff's hands behind his back, she continued to instruct Plaintiff that he was under arrest, but the Plaintiff responded by resisting. Trooper Priest, in recognizing that the Plaintiff was resisting arrest, advised the Plaintiff to submit or the Trooper would use his taser; the Plaintiff relented. Subsequently, Trooper Priest placed handcuffs on the Plaintiff, but as Trooper Bannon began to search the Plaintiff, he began to resist again. The Defendants contend that during the attempt to arrest the Plaintiff, the Plaintiff fell and struck his head and left shoulder on the floor. In contrast, the Plaintiff contends that Trooper Priest lifted the Plaintiff's arms and purposely tripped him; the Plaintiff's face hit the floor and his shoulder and head broke his fall before being dragged towards the door by the handcuffs. As a result, the Plaintiff contends that he injured his shoulder and had a "strawberry" on his forehead but that he was not bleeding. Pl.'s Resp. to Def.s' Mot. for Summ. J. Ex. 1 at 64-65. The Plaintiff's mother and girlfriend both testified at deposition that they observed the Troopers push the Plaintiff causing the Plaintiff to land face first on the floor before being drug out of the house. Pl.'s Resp. to Def.s' Mot. for Summ. J. Ex. 7 at 9-10; Ex. 8 at 11-14. After, the Plaintiff was taken to the Otsego County Jail, booked, and lodged. The Plaintiff was not injured at the time, and did not request medical attention. However, the Plaintiff's girlfriend stated that the Plaintiff complained of shoulder pain since the arrest, but had not complained of similar pain prior to that time. Pl.'s Resp. to Def.s' Mot. for Summ. J. Ex. 8 at 17-18.

Trooper Bannon subsequently requested warrants for the underlying assault and battery on RJ and resisting and obstructing, she also sought a warrant for UDAA. Trooper Bannon later

obtained a search warrant for the Plaintiff's residence to look for the Geo, but she could not locate the car. Plaintiff was released from jail the next day and called Trooper Bannon denying that he assaulted RJ and explained that because RJ owed Plaintiff money, RJ voluntarily gave him the keys. However, the Plaintiff never had title to the vehicle; the Plaintiff recalled RJ mentioning that he would give the Plaintiff the title to the Geo later. Plaintiff also notified Trooper Bannon of Roux, he denied that the Plaintiff assaulted RJ.

The Otsego County Prosecutor initially issued a warrant for the assault charge, but then later dropped the charges.  In exchange for Plaintiff's return of the vehicle to RJ, the Prosecuting Attorney agreed to dismiss the charges because a conviction was questionable under the "beyond a reasonable doubt" standard. Plaintiff then filed the instant complaint seeking money damages against Troopers Bannon and Priest. Plaintiff's one count § 1983 complaint seeks damages for entering his home without a warrant, for fabricating evidence against him and for using excessive force in the course of Plaintiff's arrest. This Court granted, in part, the Defendant's motion for summary judgment, dismissing Trooper Priest as a defendant and dismissing Plaintiff's claim that Defendants used fabricated evidence against him.

## II.      Discussion

### A.  Plaintiff's Motions in Limine Regarding Relevancy and Prejudice Versus Probative Value

#### 1.  Legal Standard

Three of Plaintiff's motions in limine reference exclusion of irrelevant evidence due to a lack of probative value; alternatively, if admitted, Plaintiff argues that the evidence should be excluded because the evidence would be substantially prejudicial. ECF Nos. 41-43. A discussion on the relevancy and exclusion of evidence is governed by the Federal Rules of Evidence where

a court must first decide if evidence is relevant, and if relevant, then the court must decide whether the evidence should be excluded. *Sutkiewicz v. Monroe County Sheriff*, 110 F.3d 352, 357 (6th Cir. 2007). Relevant evidence is generally admissible unless otherwise provided by "the United States Constitution; a federal statute; these rules (Federal Rules of Evidence); or other rules prescribed by the Supreme Court." *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 587 (6th Cir. 1994); Fed. R. Evid. 402. Evidence is considered relevant when: "(a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Accordingly, the standard for relevance is extremely liberal under the Federal Rules of Evidence and is within the broad discretion of the trial judge; however, a district court cannot exclude evidence that has even the "slightest probative worth." *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009); *United States v. Whittington*, 455 F.3d 736, 739 (6th Cir. 2006); *Finch v. Monumental Life Ins. Co.*, 820 F.2d 1426, 1431 (6th Cir. 1987). The key question in determining problems pertaining to relevancy is whether "an item of evidence, when tested by the processes of legal reasoning, possesses the sufficient probative value to justify receiving it in evidence" and the evidence relates to a material fact of the case. Fed. R. Evid. 401 advisory committee's note.

If evidence is deemed relevant, a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. A district court generally has broad discretion in balancing the probative value against prejudicial impact of evidence to exclude evidence already found to be relevant. *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008);

-7-

*Sutkiewicz*, 110 F.3d at 360 (quoting *United States v. Fienman*, 930 F.2d 495, 499 (6th Cir. 1984)).

Plaintiff alleges the evidence outlined in the motions in limine would either cause undue prejudice or would confuse the jury. Undue prejudice is defined as "the undue tendency to suggest a decision based on improper considerations; it does not mean the damage to a defendant's case that results from legitimate probative force of the evidence." *Sutkiewicz*, 110 F.3d at 360 (quoting *Doe v. Claiborne County*, 103 F.3d 495, 515 (6th Cir. 1996)). Thus, the evidence must be analyzed in conjunction with Rule 404 (b) which states that "evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404 (b)(1). In light of Rule 403, propensity evidence might have a prejudicial effect that outweighs relevance because character might weigh too much on a factfinder, whether jury or judge, and deny an individual a proper hearing. *Old Chief v. United States*, 519 U.S. 172, 181 (1997). "The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice." *Id.*

### 2. Plaintiff's Motion in Limine to Exclude Evidence of Prior Arrest and Convictions

Plaintiff, in the first motion in limine, seeks to exclude "any and all evidence, references to evidence, testimony or argument" regarding a prior first degree murder arrest and conviction in 1988. ECF No. 41. Plaintiff argues that the arrest, conviction, reversal, and dismissal after serving eight years in prison, and the resulting civil litigation are not relevant to the instant case and, if the evidence is admitted, would be unduly prejudicial to Plaintiff; accordingly, Plaintiff

argues that there is "absolutely no probative value" of the evidence that pertains to any claim or defense in the case. *Id.*

Defendant argues that Plaintiff's murder conviction and litigation is "highly probative" of Plaintiff's potential bias against "Michigan State Police, its employees, and indeed, all law enforcement" and the evidence would tend to prove that Plaintiff mistrusts the Police; this mistrust of the police would assist the jury to understand Plaintiff's actions during the arrest in this case. ECF No. 46. Furthermore, Defendant argues that the evidence is an accurate assessment of Plaintiff's credibility. Since Plaintiff is now engaged in litigation against the Michigan State Police, this case is no more than "grinding an axe" against law enforcement. *Id.* However, the overturned murder conviction and related litigation should be centered on its relevance related to supporting the §1983 claim; Plaintiff's potential bias is not an issue of the case, and there is no evidence that it was a motivating factor in filing the §1983 claim. The mistrust of the police could be indicative of a reason why Plaintiff acted as he did with Trooper Bannon, and evidence with even slight probative value should be admitted. However, as discussed below, the evidence does not satisfy the standards in Rule 401 governing relevancy. Even if the evidence is seen as relevant, Defendant's logic is perilously close in violating Rules 403 and 404.

Is the evidence relevant? For evidence to be relevant, it must satisfy a two prong test in which "(a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The evidence must be admitted even if there is slight probative value. *Dortch*, 588 F.3d at 400. The key issue in the instant case is whether Trooper Bannon violated the Plaintiff's Fourth Amendment rights by entering Plaintiff's residence without a warrant.

-9-

In the first prong of the test, the key question, based on Defendant's proffered use of the evidence, becomes whether Plaintiff's murder conviction and resulting civil litigation would make it more probable (probative) that he would file a §1983 claim against Trooper Bannon. There does not appear to be any clear connection between the evidence in question and the instant issue: Plaintiff filed suit due to the alleged actions of Trooper Bannon, entirely divorced from the 1988 murder conviction and litigation. There might have been a connection between the evidence at issue and the instant claim if Trooper Bannon was the arresting officer in 1988, but no such facts are present in the record. The question for the second prong of the test becomes whether the overturned murder conviction and subsequent litigation is of consequence to his current §1983 claim. Similar to the first prong of the test, the evidence at issue and the instant claim filed are wholly separate from each other, and are not related based on any facts presented. Even though the standard of relevancy is liberal, this evidence fails both prongs of the Rule 401 test and should not be admitted into evidence. The overturned murder conviction and subsequent civil litigation are not relevant to the § 1983 claim.

Plaintiff argues that if the murder conviction and litigation were deemed as relevant, the evidence would be unduly prejudicial because the evidence would "only serve to try to diminish the plaintiff in the eyes of the jury." ECF No. 41. Undue prejudice is grounds for excluding relevant evidence from a trial. Fed R. Evid. 403. The question is thus whether the murder conviction creates an undue tendency to suggest a decision based on improper consideration. *See Sutkiewicz*, 110 F.3d at 360. Defendant contends that the inclusion of the murder conviction and subsequent dismissal is relevant to demonstrate that Plaintiff does not trust the police and lacks credibility to assert a §1983 claim; in essence the evidence is being used for the jury to focus on potential character flaws of Plaintiff due to previous litigation and not to focus on the case itself.

ECF No. 46. The focus on potential character flaws, and establishing the fact that a past overturned murder conviction dismisses the credibility of Plaintiff, violates Rule 404(b)(1). Accordingly, Rule 404(b)(1) states that "evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Coupled with Rule 403, Defendant's use of the evidence becomes similar to propensity evidence, and even if probative in nature, propensity evidence is routinely excluded because its "disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice." *See Old Chief*, 519 U.S. at 181. The 1988 murder conviction and subsequent civil litigation will be excluded as evidence at trial for this purpose because of the substantial prejudicial effect that greatly outweighs any probative value the evidence might have.

Alternatively, Defendant argues that the 1988 murder conviction and subsequent litigation would be relevant in establishing causation and damages. Defendant hypothesizes that Plaintiff will likely claim non-economic damages of mental and emotional distress focusing on the fear of police and fear of police misconduct. The murder conviction and related civil litigation could possibly be considered relevant under these circumstances. In addressing the first prong of the two prong test for relevancy, the evidence could be a basis in explaining why Plaintiff would have emotional or mental distress. That is, he may have a heightened anxiety about law enforcement because of his mistreatment for eight years. These facts might assist the jury understanding his mistrust of the authorities. Second, the murder conviction could be of consequence to the alleged damages because the mistreatment by authorities could lead to added mental or emotional distress. Accordingly, the evidence would not be unduly prejudicial because instead of attacking the character of Plaintiff, the probative value of the evidence would be to

-11-

establish why there would be emotional or mental distress from the instant claim. Under these circumstances, the evidence is reasonably relevant and probative as to Plaintiff's alleged damages claim. However, Defendant only hypothesizes at this juncture that Plaintiff will claim either a renewed, continued, or heightened emotional or mental distress as non-economic damages. Evidence of Plaintiff's prior conviction and subsequent litigation is thus irrelevant and will be excluded unless Plaintiff contends at trial that he has suffered a renewed, continued, or heightened level of emotional or mental distress.

### 3.   Plaintiff's Motion in Limine to Exclude Evidence of Unrelated Suits

Plaintiff also seeks to exclude evidence pertaining to earlier lawsuits involving his business because all suits of this nature are more than 10 years old. ECF No. 42. Plaintiff argues that the evidence has no probative value to his § 1983 claim. Defendant agrees that the 10-year-old lawsuits involving Plaintiff's business are not relevant to the instant case. ECF No. 46. Plaintiff's motion on this issue will be granted, and evidence pertaining to lawsuits involving his business will be excluded.

### 4.   Plaintiff's Motion in Limine to Exclude Evidence of Dismissed Parties and Claims

Next, Plaintiff seeks to exclude evidence of dismissed parties and claims, arguing that the claims and defendant were dismissed with prejudice and are not relevant to the instant case and the evidence would only serve in confusing the jury and wasting time. ECF No. 43. Plaintiff argues that there is no probative value in the evidence because it does not relate to any claim or defense. *Id*. In contrast, Defendant argues that the evidence is probative because it would help establish Plaintiff's bias against law enforcement and would help to question Plaintiff's credibility, allowing the jury to infer that Plaintiff has pursued a "kitchen-sink style" approach to

-12-

litigation. ECF No. 46. Taking both arguments into consideration, the Court will grant Plaintiff's motion in limine.

The United States District Court of Tennessee, Nashville Division, decided a similar motion where the defendants argued against the court granting the plaintiff's motion in limine to exclude evidence of prior claims, contending that the dismissed claims would be relevant to the jury because it weighed on the credibility of the plaintiff. *Heriges v. Wilson County, Tenn.*, No. 3:09-cv-0362, 2010 WL 4116719, at *15 (M.D. Tenn. Oct. 19, 2010). The court based its decision on the theory that general pleading allows for a party, acting in good faith, to file multiple and alternative claims regardless of consistency and allow for discovery and other motions, such as summary judgment to define the main issues of the case. *See Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 805 (1999); Fed. R. Civ. P. 8(d)(2). Other courts have similarly held that the practice of shielding claims and issues dismissed on summary judgment and other pretrial rulings are common practice, and motions requesting such exclusions should be granted. *See, e.g.*, *Bryce v. Trace, Inc.*, No. CIV-06-775-D, 2008 WL 906142, at *3 (W.D. Okla. March 31, 2008). Stated otherwise, motions in limine should be granted under these circumstances because such evidence has little to do with establishing credibility, and is of little probative value, but instead "carries significant risk of undue delay and waste of time . . ." that would fall under exclusion of evidence in Rule 403. *See L'Etoile v. New England Finish Systems Inc.*, 575 F. Supp. 2d 331, 340 (D.N.H. 2008).

Similarly, Plaintiff filed a complaint, in good faith, alleging different claims pursuant to the Federal Rules of Civil Procedure. That some claims and a defendant were dismissed pursuant to a motion for summary judgment is a normal occurrence that can be shielded from the jury. Plaintiff's filing of multiple or alternative claims that were dismissed as a matter of law does not

-13-

speak to his credibility, but instead is a manifestation of proper pleading procedures discussed by Rule 8(d)(2). *See* Fed. R. Civ. P. 8(d)(2). Regardless of whether the evidence is relevant, the evidence is excludable under Rule 403. *See* Fed. R. Evid. 403. Accordingly, Plaintiff's motion in limine on this issue will be granted as in the best interests of time and to prevent delay during a trial.

### B.  Plaintiff's Motion in Limine to Exclude the Incident Report

Federal Rule of Evidence 803(8) excludes from the hearsay rule certain public records, and expressly contemplates the admissibility of investigative reports such as the incident report in this case that sets out "a matter observed while under a legal duty to report," including "factual findings from a legally authorized investigation." The hearsay exception set forth in Rule 803(8) is based upon the assumption that public officers will perform their duties, that they lack motive to falsify, and that public inspection to which many such records are subject will disclose inaccuracies. 5 Wigmore, Evidence § 1632 at 618-21 (Chadbourn rev.1974). Under the Rule, a public record is not excluded by the hearsay rule if it is a record, report, statement, or data compilation if

> (A) it sets out:
>
>> (i) the office's activities;
>>
>> (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
>>
>> (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
>
> (B) neither the source of information nor other circumstances indicate a lack of trustworthiness.

Fed. R. Evid. 803(8).

-14-

The guarantee of accuracy of public records admissible under Rule 803(8) depends on "the assumption that a public official will perform his duty properly and the unlikelihood that he will remember details independently of the record." Fed. R. Evid. 803, advisory committee note to Paragraph (8).  As noted, Rule 803(8) presumes the admissibility of an investigator's findings "unless the sources of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(C); *see also* Fed. R. Evid. 803(8) advisory committee note (stating that the Rule "assumes admissibility in the first instance but with ample provision for escape if significant negative factors are present."). In light of this presumption, the party opposing the admission of the report must prove that the report is not trustworthy. See *Hickson Corp. v. Norfolk S. Ry. Co.*, 124 F. App'x 336, 344 (6th Cir. 2005).

The Court may use four factors in assessing whether an evaluative report is trustworthy: (1) the timeliness of the investigation, (2) the special skill or experience of the official, (3) whether a hearing was held and the level at which conducted, and (4) possible motivation problems. See Fed. R. Evid. 803 advisory committee note to Paragraph (8). "This list of factors is not exclusive; any circumstance which may affect the trustworthiness of the underlying information, and thus, the trustworthiness of the findings, must be considered when ruling upon the admissibility of factual findings under this rule." In *re Complaint of Paducah Towing Co., Inc.*, 692 F.2d 412, 420 (6th Cir. 1982) (citations omitted). In addition to these criteria, the Sixth Circuit has stated that when admitting a public record or report, "[R]ule 803(8)(C) [should be applied] in a common sense manner, subject to the district court's sound exercise of discretion in determining whether the hearsay document offered in evidence has sufficient independent indicia of reliability to justify its admission." *Miller v. Caterpillar Tractor Co.*, 697 F.2d 141, 144 (6th Cir. 1983).

-15-

Both parties rely on *Miller v. Field*, 35 F.3d 1088, 1091 (6th Cir.1994), in which the court held that "[t]he 'factual findings' in a report qualifying for a Rule 803(8)(C) exception to the hearsay rule must . . . be based upon the knowledge or observations of the preparer of the report." Plaintiff emphasizes that, pursuant to *Miller*, the report should be excluded because it contains hearsay statements from third parties as the basis for portions of the factual finding. While the Sixth Circuit has not expressly overruled *Miller*, the current rule to be followed is set out by *Combs v. Wilkinson*, 315 F.3d 548, 555-56 (6th Cir.  2002) and Hickso*n Corp. v. Norfolk S. Ry. Co*., 124 F. App'x 336 (6th Cir. 2005), which confirm that it is not necessary that the person who prepares the report have first-hand knowledge of the events for the report to be admissible pursuant to Rule 803(8).

Plaintiff notes that Michigan law provides that admission of police reports in a case against the police constitutes an abuse of discretion because the reports are inadmissible hearsay. *Solomon v. Shuell*, 435 Mich. 104 (1990); *see also Central Fabricators, Inc. v. Big Dutchman*, 398 Mich. 352 (1976); *People v. Cortez*, 131 Mich. App. 316 (1984); *People v. Tanner*, 222 Mich. App. 626 (1997). In *Solomon*, Plaintiff notes that three of the justices concluded that the police reports were completed with knowledge of possible internal police investigation, criminal investigation and civil litigation were thus untrustworthy, four of the justices believed that police reports were investigative reports, and thus not admissible under Federal Rule of Evidence 803(8)(B), and all the justices agreed that trustworthiness is a threshold requirement for admissibility under the business records exception.  Michigan law, however, is not applicable to the motion before the Court.

Plaintiff contends that the evidence contained within a police report is cumulative of evidence that can better be presented by live testimony of each officer but the police reports are

available to be used if needed to refresh the officer's memory under Rule 612. Plaintiff asserts that Rule 612 nevertheless does not allow the document to be admitted into evidence, in part, because documentary evidence may have a tendency to highlight the evidence presented because it is available to go into the jury room and remains present throughout trial unlike trial testimony. This tendency of highlighting some evidence over other live testimony, Plaintiff contends, may cause jury confusion. Plaintiff argues that these police reports thus should not be admitted under Rule 403 because the probative value of the police reports on this issue is substantially outweighed by the danger of unfair prejudice, confusion of the jury and needless presentation of cumulative evidence.

Plaintiff also contends that the police officers knew that they would be subject to a civil lawsuit, so the reports are highly untrustworthy. Plaintiff does not explain how or why the officers would have had this knowledge. Additionally, Plaintiff emphasizes that the police officers will be present for trial and able to describe what they saw, avoiding any hearsay problems. They will be able to use the reports to refresh their recollection if they meet the requirements. Thus, the jury would not be benefitted in any way by the report.

In response, Defendant contends that applicable law recognizes investigatory reports as admissible business records under the hearsay exception of Federal Rule of Evidence 803(8). The rule allows admission of reports that contain facts as well as opinion and conclusion. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169-70 (1988). This is particularly true when the facts, opinions, and conclusions concern direct observations of the author of the report. *Id*.

Defendant asserts that Plaintiff omits the important facts of *Miller*, which concerned an after-the-fact state police investigation of rape allegations at a penal institution and much of the reports admitted into evidence were not based upon such firsthand knowledge or observation. *Id*.

-17-

at 1088, 1091. Defendant contends that the opposite is true here—the core of the report at issue is based upon her firsthand observations. It was recorded in the ordinary course of her police business and it sets out her activities, as Rule 803(8)(A) contemplates. Trooper Bannon met with the complainant, viewed the evidence (i.e., the vehicle title), noted and photographed the physical injuries that she could see on the complainant, and visited the site of the alleged crime with the complainant. ECF No. 46 Ex. 1 at 1-2. With respect to the encounter with Plaintiff, the majority of that portion of the report is an admissible summary of Trooper Bannon's observations of Plaintiff's conduct, her own actions in response to Plaintiff, and the reactions of Trooper Priest. *Id.* at 3.

Defendant proposes that the report be admitted at trial, but with excludable portions redacted since the report in its entirety is not inadmissible. Defense counsel submits that he is willing to confer with Plaintiff's counsel to prepare the appropriate redactions and present disputed portions of the report, if any, to the Court.

Plaintiff does not appear to challenge, and there can be no real question, that the officer who prepared the incident report possessed the requisite skill and experience necessary to conduct the investigation. Although no hearings were held, the Rule makes no reference to a hearing and this suggested factor for consideration "is not the sine qua non of admissibility under Rule 803(8)(C) when other indicia of trustworthiness are present." *Baker v. Elcona Homes Corp.*, 588 F.2d 551, 558 (6th Cir. 1978). There is no evidence that Trooper Bannon was biased or had improper motives in preparing the report. Thus, the Court must evaluate the trustworthiness of the underlying information relied on by the Officers in preparing the report.

Plaintiff generally contends that the report is untrustworthy because the officers knew they would be subject to litigation, but it is his burden to prove that the report is not trustworthy

-18-

and not merely offer a conclusory assertion.  In other words, the sources of information and other circumstances do not indicate a lack of trustworthiness as required by Rule 803(8) in order to conclude that the incident report is inadmissible.

Plaintiff also argues that the third party witness statements contained in the report lack trustworthiness and are inadmissible hearsay. While 803(8) reports may rely on sources of information other than the preparer's own personal observations, exclusion will nonetheless be warranted if those sources themselves indicate a lack of trustworthiness. *Alexander v. CareSource*, 576 F.3d 551, 563 (6th Cir.2009). Such a report cannot rely on "a collection of secondhand observations" that amount to nothing more than "the hearsay statements of biased witnesses." *Dortch v. Fowler*, 588 F.3d 396, 404 (6th Cir. 2010). Plaintiff's statements contained in the report are not considered hearsay because they are statements of a party-opponent pursuant to Rule 801(d)(2).  Defendant's suggestion of conferring with opposing counsel regarding portions of the report that should be redacted because they do not fall under a hearsay exception is reasonable, and the Court will deny Plaintiff's motion in limine to exclude the report in its entirety. The parties will be directed to confer to redact the portions of the report that are inadmissible hearsay.  Objections may still be appropriate during the course of the trial regarding the report's potential for unfair prejudice, jury confusion or as being cumulative of the evidence if necessary, but the parties' papers do not provide adequate information for making such a determination at this juncture.

### III.    Conclusion

Accordingly, it is **ORDERED** that Plaintiff's motion in limine to exclude evidence of prior arrests and convictions (ECF No. 41) is **GRANTED**.

It is further **ORDERED** that Plaintiff's motion in limine to exclude evidence of unrelated lawsuits (ECF No. 42) is **GRANTED**.

It is further **ORDERED** that Plaintiff's motion in limine to exclude evidence of dismissed parties and dismissed claims (ECF No. 43) is **GRANTED**.

It is further **ORDERED** that Plaintiff's motion in limine to exclude police reports (ECF No. 44) is **DENIED**.  The parties are directed to confer to redact the portions of the report that contain inadmissible hearsay and to provide joint supplemental briefing to the Court including a copy of the original report, a copy of the proposed redacted report, and identifying the portions of the report, if any, on which the parties are unable to reach an agreement as well as the legal support for the disagreement.  The parties' joint supplemental brief is due on or before August 28, 2012.

It is further **ORDERED** that the hearing scheduled for May 29, 2012 is **CANCELED** because oral argument will not aid in the disposition of the motion. E.D. Mich. L.R. 7.1(f)(2).

It is further **ORDERED** that trial is **RESCHEDULED** for September 18, 2012 at 8:30 a.m.

It is further **ORDERED** that the parties' jury instructions and proposed joint final pretrial order are due on or before **September 4, 2012**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: June 6, 2012

-20-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 6, 2012.

Tracy A. Jacobs
TRACY A. JACOBS